**Youseph Abdallah Muhamad KAHOOK, Appellant,**

v.

**C. W. JOHNSON, District Director, Department of Justice, Bureau of Immigration and Naturalization, New Orleans, Louisiana, Appellee.**

**No. 17978.**

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1960.

Dean A. Andrews, Jr., New Orleans, La., for appellant.

Lloyd Cyril Melancon, Asst. U. S. Atty., New Orleans, La., M. Hepburn Many, U. S. Atty., Prim B. Smith, Jr., First Asst. U. S. Atty., New Orleans, La., for appellee.

Before HUTCHESON, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal from a summary judgment denying appellant's petition to review and set aside a final decision of deportation by the Special Inquiry Officer of the Immigration Service raises two questions. The first is whether the governmental agency's final decision is supported by substantial evidence on the record as a whole.[1] The second is wheth-

1. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

er, as a matter of law, the request by appellant for relief from military service as a native of a neutral country could operate to deprive him of his right to later becoming a citizen[2] when, in fact, the country of his citizenship was later declared to be a co-belligerent instead of a neutral nation.

Touching on the first question is appellant's charge that he was unable to have produced certain documents in the hands of the immigration authorities which would have disclosed that at the time he executed the form DSS 301 he could not read, write or speak the English language. Appellant urges on us, as he did on the trial court, that this fact was relevant to his contention that he could not intelligently "elect between service in the Armed Forces and denial of citizenship." This, we think, is a complete non sequitur. It does not at all follow, nor could it be inferred, that because appellant was unable to read, write or speak English he therefore did not voluntarily and intelligently prepare and sign the form requesting exemption from military service. No other proof was offered by him that he was in fact not able intelligently to make the request. It is immaterial whether he fully apprehended what would be the legal result flowing from such request. The result was such as was fixed by law. So long as it is not disputed on the record that he knew the effect of the request, that is that he would acquire an exemption from military duty, it is not necessary that he also know that by obtaining such exemption he was thereafter subjecting himself to the disabilities such action entailed.[3] The document which he sought to have produced in the hearing before the Special Inquiry Officer, showing only that he did not read, write or speak English, would not have thrown any light on the issue whether he understood the effect and purpose of his request for exemption.

As to the second point, we need only cite our earlier decision in Jubran v. United States, 5 Cir., 255 F.2d 81. Appellant is here relying upon the decision of the District Court for the Eastern District of Michigan in Petition of Ajlouny, 77 F.Supp. 327, for the proposition that a request filed as was this one is ineffective to debar the applicant from citizenship when the country, then a neutral, is later held by the Executive Department to be a co-belligerent. We do not believe any such holding is warranted. We so held in the Jubran case. Here, as in the Jubran case, the appellant applied for and obtained a deferred status by reason of his request on the basis of his being a citizen of what he thought was, and, for all we know, actually was until the later determination, a neutral country. He enjoyed his deferment for some seven months, after which time his draft status was changed to eliminate his ground for deferment. Upon the execution of such request and the granting of the deferment it is our view that the statute inexorably attached the disqualification. As we said in Jubran, "the statute gave him the choice of exemption and no citizenship, or no exemption and citizenship," and further, "the bar arises from the making of the application and the granting of relief from military service." Jubran v. United States, 255 F.2d 81, 83.

The bar which is imposed by statute cannot be raised by the courts: "Naturalization is a privilege, to be given, qualified, or withheld as Congress may determine, and which an alien may claim as of right only upon compliance with the terms which Congress imposes." United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 572, 75 L.Ed. 1302.

The judgment is affirmed.

**2.** Selective Training and Service Act, 50 U.S.C.A.Appendix, § 454(a) provides that "* * * any alien who makes such application shall thereafter be debarred from becoming a citizen of the United States."

**3.** It is to be noted that appellant had previously registered for the draft in accordance with the requirements of the law and that he had corresponded with his draft board.